AMERICAN ORDNANCE CO. v. DRIGGS-SEABURY GUN & AMMUNITION CO.

(Circuit Court, D. Connecticut. February 23, 1900.)

No. 962.

PATENTS—VALIDITY—BREECH-LOADING ORDNANCE.
The Dashiell patent, No. 544,637, for breech-loading ordnance, as to claims 12, 14, 19, and 20, is void for anticipation and lack of patentable invention.

This was a suit in equity for infringement of a patent. On final hearing.

W. H. Singleton, for complainant.
Wilson & Wallis and Wilkinson & Fisher, for defendant.

TOWNSEND, District Judge. Final hearing on bill and answer raising usual questions as to validity and infringement of claims 12, 14, 19, and 20 of patent No. 544,637, granted August 13, 1895, to Robert B. Dashiell, for breech-loading ordnance. Counsel for complainant strenuously contends that defendant is estopped to deny the validity of the patent in suit, because certain persons who sold to complainant's representatives their stock in an earlier company, which owned the patent in suit, afterwards became the incorporators of the defendant company. The evidence does not sufficiently support the contention, and it will not be discussed.

Claims 12 and 14 relate to extractor mechanism. They are as follows:

"(12) In breech-loading ordnance, the gun, the extractor having a fulcrum on, and said extractor bearing directly against the body of said gun, and a bearing surface on the breech mechanism engaging said extractor to turn same on its fulcrum as the breech opens." "(14) In breech-loading ordnance, the combination, with the gun, of the extractor loosely pivoted thereto, and having a fulcrum thereon, and the breech-operating mechanism engaging the extractor as described to first rock it on its fulcrum, and then turn it on its pivot, and away from the fulcrum, all substantially as described."

Complainant's expert says:

"I understand the twelfth claim to be for the extractor having the inner fulcrum directly against the body of the gun, in combination with the breech

mechanism adapted to engage the extractor, and cause the same to swing on said fulcrum. I understand the fourteenth claim to be, in substance, for the extractor arranged to swing first around the fulcrum on the gun near the cartridge, and thereafter around a second fulcrum, more remote from the cartridge, in combination with the breech mechanism acting on the extractor, and causing the same to move or turn on the two fulcra successively, whereby the extractor is first given the short powerful action to loosen the cartridge shell, and thereafter a longer and quicker movement to carry the shell rearward."

It is so clear from the specifications of the patent, the history of the prior art, and the admissions which the learned and candid expert for complainant was forced to make, in view, especially, of the Lee, Nordenfelt, and Farquharson patents, that these claims are anticipated, that it is unnecessary to discuss them. Claim 19 is as follows:

"(19) In breech-loading ordnance, the combination with the gun and a breech-block carrier pivoted thereto, of the mutilated screw breech block on said carrier having a side cut away longitudinally in a curve drawn from the pivotal support of the carrier."

The experts agree that the gist of the alleged invention covered by this claim was the cutting away of the side of a cylindrical breech-block concentric with the pivot pin. In the older forms of "three-motion gun" the breech block was first rotated, then withdrawn axially from the breech, and then swung to one side. The construction covered by claim 19 represents one form of what is known as a two-motion gun, so called because there is no axial movement. This two-motion element was not invented by Dashiell, but was first shown in the Noble patent, No. 377,906, of 1888, and later in the patents of Gerdom, Seabury, Dardier & Mellstrom, and others. The defendant claims as follows:

"(1) The claim is drawn to an incomplete combination, and is ambiguous, and therefore void. (2) The claim, if given the construction sought by complainant, is for a mere mechanical arrangement, which does not rise to the dignity of invention. (3) The claim is anticipated by the prior state of the art."

It is not clear, from the specifications of the patent, for what purpose the breech block is cut away. Complainant's expert contends that the intention in cutting it away was to allow the block to swing directly out of the breech of the gun. Defendant's expert contends that its real essential function is to so combine with the tongue of the breech as to hold the block against rotation while swinging on the carrier in the act of closing. The chief support for the contention of complainant's expert is found in the following statement in the preamble of the specification:

"The object of the invention is * * * also to swing the breech block of a mutilated screw breech gun to one side of the bore of the gun without first retracting it in line with the bore."

But in the rest of the specification it is repeatedly stated that the segments of the breech block embrace the projections on the gun so as to prevent the rotation of the breech block on its center, and complainant's counsel is forced to admit the correctness of the following admission of complainant's expert:

"The Dashiell patent has its parts put together in an inartistic or an illogical way. There are several references in the patent, in various connections,

to the breech block engaging the guide face, 7, to prevent rotation at improper times, and apparently a large part of this could be left out without tending to render the patent obscure in its meaning. It is a fact, I think, that the descriptive matter relating to the function of the guide face, 7, in preventing rotation of the breech plug occupies more space than the descriptive matter of the breech plug and its adjuncts."

If defendant's interpretation be correct, or, rather, if complainant has failed to prove that the function covered by claim 19 was merely to enable the breech block to swing outward without being retracted, then defendant does not infringe. If complainant's contention be conceded, then the construction is so nearly anticipated in the prior art that it did not involve invention. The alleged invention, according to complainant's counsel, "consisted in applying the cutaway feature to a cylindrical breech block." The other two-motion guns, except Dardier & Mellstrom, were described by the patentee as follows:

"I am aware that frusto-conical breech plugs on the mutilated-screw system have been made to swing open on a pivoted carrier from closed (but unlocked) position. The frusto-conical form of breech block permits this; but there are practical difficulties in the way of construction of frusto-conical breech mechanism which make that form objectionable in many instances. I am also aware that a cylindrical breech mechanism of the mutilated-screw form has been devised wherein the breech plug has but two thread-segments and flattened sides, in which the plug swings open through a slot in the side of the gun. This form has some objections on account of the considerable cutting away both of gun and breech plug."

In these prior constructions the surface was cut away so as to leave alternately these segments and blanks. The Dashiell drawings indicate that he cut away or chamfered out only enough of the block to permit it to clear the corner of the breech. This construction appears to be shown in the drawings of, although it is not described in, the Seabury patent. Dardier & Mellstrom's British patent No. 17,490 of 1893 shows the combination of said claim 19, and Fig. 13 of the drawings shows the precise construction covered by said claim, except that the gun itself is not drawn. In Mellstrom's patent of 1893 he states:

"Instead of using a taper-sided breech block, such as that above described, I sometimes used a cylindrical segmental-screw block or plug."

The only other distinction between Dardier & Mellstrom and the patent in suit is that in said patent the breech-block carrier is not pivoted to the gun, as in the patent in suit, but to a movable ring on the gun. Such alternative constructions were common in the art, and do not show any patentable difference. The Dardier & Mellstrom patent probably comes nearer to an anticipation than the other constructions of the prior art. Other patents, however,—notably said patent to Seabury,—showed various kinds of breech blocks cut away on different sides in order to dispense with the axial movement. Therefore there was no invention in adapting the cutaway idea to the cylindrical breech. This conclusion is supported by the disclaimers of the patentee in his specification, and by the admissions in the file wrapper. Even if claim 19 sufficiently states the function of its construction claimed by complainant, and even if said construction is not anticipated, yet it must be held to be void, as being for a mere me-.

chanical arrangement which did not involve invention in view of the prior art. These conclusions dispense with the necessity of discussing the contentions as to the Silfversparre patent, No. 542,639, which, if part of the prior art, would alone be conclusive against the validity of claim 19. Claim 20 is as follows:

"(20) In breech-loading ordnance, the gun, the breech-block carrier pivotally connected thereto and having a closed rear face piece covering and projecting beyond the edges of the breech block, which block is swiveled thereto, all combined substantially as described."

This claim covers merely a hinged cover extending beyond the block. Complainant's expert says it "is directed to a special construction and arrangement of parts for keeping dust, dirt, and other foreign matters out of the joint at the rear end of the breech plug." It is wanting in invention, and is shown in prior patents. Let the bill be dismissed.